IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN
_____

MISTI D. HAWN,

    Plaintiffs,                                  OPINION and ORDER

    v.                                          24-CV-869

CITY OF WATERTOWN and
EMILY MCFARLAND,

    Defendants.
_____

Plaintiff Misti Hawn filed this lawsuit claiming that defendants City of Watertown and Emily McFarland violated her First, Fifth, and Fourteenth Amendment rights by amending the city's noise ordinance, which resulted in the closing of her bar. Defendants have filed a motion to dismiss under 12(b)(1) and 12(b)(6) of the Federal Rules of Civil Procedure, asserting a lack of standing and timeliness, as well as a failure to state a claim upon which relief can be granted. Even accepting the allegations in the complaint as true, the court will grant defendants' motion because several of Hawn's claims are time-barred and the others must be dismissed for lack of standing.

ALLEGATIONS OF FACT[1]

In February 2020, plaintiff Misti Hawn opened "The Bar" in Watertown, Wisconsin, a bar and venue that hosted live music and other community events. When The Bar first opened, Hawn had a good working relationship with the City and Emily

---

[1] The following allegations are drawn from plaintiff's complaint (dkt. #1) and are accepted as true for purposes of resolving defendants' motion to dismiss.

McFarland, the Mayor of Watertown. However, her relationship with defendants deteriorated throughout the remainder of 2020. (Dkt. #1, ¶ 26.)

First, The Bar's liquor license was issued with a typographical error. However, when Hawn pointed out the error to the city clerk, the clerk refused to correct it and told Hawn that The Bar lacked a valid license. Still, the error was eventually corrected, if only after Hawn met with Mayor McFarland, the city attorney and a police officer. Second, when Hawn told the mayor that she was concerned about the relationship between The Bar and the City, McFarland responded that actions of Hawn's boyfriend at the time, who owned a gym in Watertown and had been accused of violating the City's COVID policies, were reflecting poorly on her. Specifically, McFarland told Hawn that "the City was being tougher on The Bar because of Jorge's behavior during COVID." (Dkt. #1, ¶ 33.) Third, during April 2021, Hawn's position as President of the Police and Fire Commission was not renewed. Instead, Mayor McFarland's high school classmate assumed that role.

Sometime after April 2021, Hawn's boyfriend also announced his plan to run for mayor of Watertown. Hawn alleges that the City's hostile behavior toward her escalated further after this announcement, including an increase in the number of violation checks, or "bar checks," that her establishment received. Hawn alleges that these bar checks were occurring weekly, involved between two and six officers, and made The Bar's patrons uncomfortable. When she asked the officers why they were at The Bar, they would often say that they had received a noise complaint, even when no sound could be heard outside. Nevertheless, Hawn alleges that she "lower[ed] the sound to a level that the officers approved of which was often an unrealistically low level." (Dkt. #1, ¶ 45.) According to

2

Hawn, other bars in the City played loud music with their doors open, but the City did not perform excessive bar checks on them.

In June 2021, The Bar hosted a two-day amateur boxing event. During one of the nights, Hawn was issued a ticket at 10:05 p.m. for violating the City's noise ordinance, which at the time stated:

> No person shall operate or play any radio, television, phonograph, drum, musical instrument or similar noise-making device between the hours of 10:00 p.m. and 7:00 a.m. in such a manner or as to create a noise disturbance of such volume or nature as to annoy or disturb a reasonable person of normal sensitivities.

(Dkt. #1, ¶ 53.) Hawn alleges that by 10:05 p.m., the event was over, staff were cleaning up and the noise was not excessive. Later that month, The Bar also held a large benefit event with more than 150 people. The police arrived after 10:00 p.m. to investigate a noise complaint and check IDs, discovering two underage individuals who had come to the benefit with their parents. As a result of this infraction, the City issued Hawn five tickets, although she does not allege what the tickets were for or whether she thought any were unjustified.

On September 24, 2021, The Bar received another ticket for hosting of a concert, despite Hawn "not believing" any police were present. (Dkt. #1, ¶¶ 60–61.) In October and November 2021, the police again conducted a handful of bar checks, and while none resulted in any citations, a Watertown police officer volunteered that his failure to issue a ticket in response to a noise complaint on November 20 would get him in trouble, having been "instructed by the Chief [of Police] that if they get a call complaining about The Bar,

3

they have to issue a ticket." (*Id*., ¶¶ 63-64.) All of the tickets Hawn received between June and September 2021 were resolved after Hawn pleaded no contest and paid a fine.

On December 7, 2021, the City amended the noise ordinance by removing the phrase "between the hours of 10:00 p.m. and 7:00 a.m." Shortly thereafter, on December 29, 2021, Hawn announced on Facebook that The Bar was closing, explaining that "[t]he business model The Bar was built on is no longer viable […] I thank all of you for the support over the last two years." (Dkt. #1, ¶ 69.) The Bar closed permanently on December 31, 2021.

Approximately 18 months later, in June 2023, the "Bentzin Family Town Square" opened in the City of Watertown. The Town Square project had been announced in 2021 after a prominent citizen of Watertown, Charles Bentzin, passed away and his estate donated one million to the City to build the Town Square. In 2023, the City began hosting events at the Town Square, including music events, craft fairs, vendor events and food trucks. According to Hawn, those events were "much louder" than her events at The Bar.

On December 6, 2024, Hawn filed this lawsuit, claiming that defendants violated several of her constitutional rights when it amended the City's noise ordinance. Specifically, she asserts the following three claims against defendants McFarland and City of Watertown: (1) inverse condemnation in violation of the Fifth Amendment; (2) denial of equal protection under the law in violation of the Fourteenth Amendment; (3) and infringement of free speech in violation of the First Amendment. Plaintiff also seeks a declaration that the City's noise ordinance is facially unconstitutional, because it is "overly vague" and because defendants allegedly passed it to retaliate against her exercise of free speech. She seeks both declaratory and injunctive relief, as well as nominal and punitive

4

damages. In response, defendants have moved to dismiss all of plaintiff's claims under Rules 12(b)(1) and 12(b)(6).

OPINION

I. Scope and Timeliness of Plaintiff's Claims

Before considering the merits of defendants' motion to dismiss, the court must address the scope of plaintiff's claims. As set forth in her complaint, plaintiff's claims appeared to be based on the City's amendment of its noise ordinance on December 7, 2021. (Dkt. #1, ¶¶ 74, 80, 84.) Her response brief also largely focuses on the constitutionality of that amendment. However, plaintiff also makes several arguments about the City's actions toward her and The Bar *before* the amendment, including excessive police checks at The Bar, tickets for noise violations, treating her poorly because of her boyfriend's actions, and treating her differently than other bar owners.

As defendants point out, however, even if plaintiff intended to assert claims based on the City's other actions before December 2021, those claims are untimely. Since all of plaintiff's claims sound under 42 U.S.C. § 1983, they are subject to Wisconsin's three-year statute of limitations for personal injury claims. Wis. Stat. § 893.54 (an "action to recover damages for injuries to" a person "shall be commenced with 3 years or be barred"); *Nw. Ill. Area Agency on Aging v. Basta*, 145 F.4th 695, 701 (2024) ("[C]ourts look to the personal injury laws of the state where the injury occurred to determine the statute of limitations in a § 1983 case.") Here, plaintiff filed her complaint in this court on December 6, 2024, meaning any claims arising from events before December 6, 2021 are barred. And all of the incidents, tickets and bar-checks alleged in plaintiff's complaint occurred before December 6, 2021. Specifically, the last time plaintiff received a ticket at The Bar was in

5

September 2021; the last bar check was in November 2021; and she points to no incidents after December 6, 2021, that could support any constitutional claim against the City or defendant McFarland.

In fairness, plaintiff argues briefly that the so-called "continuing violation" doctrine applies here because defendants continually harassed her and her business beginning in April 2021. Under that doctrine, the applicable statute of limitations for repeated injuries does not begin to run until the date of the last injury. *Kovacs v. United States*, 614 F.3d 666, 676 (7th Cir. 2010). However, the doctrine does not help plaintiff, where the last alleged injury occurred outside the three-year statute of limitations period. Specifically, plaintiff's complaint alleges that the last "bar check" she experienced was November 20, 2021, when a police officer arrived after a noise complaint, but did not issue a ticket because the bar was quiet. Thus, even if that check could qualify as an "injury," it occurred more than three years ago. Finally, it would be too great a stretch to pull all of the alleged injuries from untimely harassment claims based on a single, timely claim challenging the City's adoption of an amendment to its noise ordinance. Even it if were not, because that claim fails for other reasons, it cannot be used for that purpose either.

## II. Standing to Sue Over Amendment

Thus, the City's only action falling within the statute of limitations is the amendment of the City's noise ordinance on December 7, 2021. As discussed above, plaintiff asserts several claims based on challenges to the City's amended noise ordinance. However, because defendants have raised standing, and constitutional standing is a threshold, jurisdictional question, the court must consider plaintiff's standing first.

6

To have standing in federal court, a plaintiff must have "(1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo Inc. v. Robins*, 578 U.S. 330, 338 (2016). Here, defendants argue that plaintiff has failed to plead allegations showing that she suffered an "injury in fact" because of defendants' actions.

At the pleading stage, "general factual allegations of [Article III] injury resulting from the defendant's conduct may suffice, for on a motion to dismiss we presume that general allegations embrace those specific facts that are necessary to support the claim." *Prairie Rivers Network v. Dynegy Midwest Generation, LLC*, 2 F.4th 1002, 1008 (7th Cir. 2021) (internal quotation marks and citation omitted). "Injury-in-fact for standing purposes is not the same thing as the ultimate measure of recovery. The fact that a plaintiff may have difficulty proving damages does not mean that he cannot have been harmed." *Abbott v. Lockheed Martin Corp.*, 725 F.3d 803, 808 (7th Cir. 2013).

Plaintiff identifies two injuries that she says support standing. *First*, she contends that "the passage of the new ordinance caused her to shut down The Bar, because the existence of the new ordinance made it impossible to use her property as it was not possible to have a live entertainment venue with the ordinance in effect." (Plt.'s Br. (dkt. #15) 14–15.) Similarly, she alleges in her complaint that "[i]t is impossible to operate a bar and live music venue without violating Watertown Ordinance 410-40(E) because a bar and live music venue intrinsically creates a noise level or nature which could 'annoy or disturb a reasonable person of normal sensitivities.'" (Plt.'s Cpt. (dkt. #1) ¶ 91.) But plaintiff's allegation that it would have been "impossible" to operate her business is conclusory and not supported by any other, specific allegations in her complaint. For example, she does

7

not even allege that The Bar received a citation for violating the December 2021 amended version of the noise ordinance, nor that any "bar checks" were even conducted after the ordinance was amended. *See Baur v. Veneman*, 352 F.3d 625, 636–37 (2d Cir. 2003) ("While the standard for reviewing standing at the pleading stage is lenient, a plaintiff cannot rely solely on conclusory allegations of injury or ask the court to draw unwarranted inferences in order to find standing.").

Plaintiff argues that her allegations are not conclusory because the City had already applied the old, less restrictive noise ordinance against her in an excessive manner. However, her allegations about harassment under the old noise ordinance do not support an inference that the new ordinance will cause injury. Indeed, plaintiff identifies only two specific incidents in which she received tickets for noise violations under the old ordinance (dating back to June and September 2021), and she does not allege that the weekly "bar checks" performed by police were always in response to noise complaints. She also concedes that the bar checks usually did *not* result in any tickets or penalties. In addition, although plaintiff says the bar checks were "uncomfortable" for patrons of the bar, she says nothing about whether the noise ordinance specifically, and being required to turn down the level of music in her establishment, caused a drop in her business. Finally, and perhaps most importantly, plaintiff concedes that other bars and venues, including Bentzin Family Town Square, successfully operated in Watertown both before and after the noise ordinance was amended, completely undermining her allegation that her property became "valueless and impossible to use" after the ordinance was amended. (*See* Plt.'s Cpt. (dkt. #1) ¶¶ 20–23, 47, 76.)

*Second*, plaintiff argues that even though she no longer operates The Bar, she can challenge the new noise ordinance because she somehow faces a "sufficient threat of an imminent future injury." (Plt.'s Br. (dkt. #15) 14.) In particular, she argues that because the ordinance is broadly worded, it could apply to anyone, even someone just watching television, listening to the radio, or hosting events at their home or business, like plaintiff. In so arguing, plaintiff relies on a line of cases allowing *pre-enforcement* challenges to laws that deter the exercise of constitutional rights, especially First Amendment rights. Under those cases, "A party who is the target of an unconstitutional law need not expose himself to liability before challenging its constitutionality if there are "circumstances that render the threatened enforcement sufficiently imminent." *Brown v. Kemp*, 86 F.4th 745, 761 (7th Cir. 2023) (citing *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158–59 (2014); *Babbitt v. United Farm Workers Nat'l Union*, 442 U.S. 289, 298 (1979); *Steffel v. Thompson*, 415 U.S. 452, 459 (1974).)

However, plaintiff's challenge does not fall under the category of pre-enforcement challenges sufficient to satisfy constitutional standing. Specifically, to plead a pre-enforcement injury, a plaintiff must allege "an *intention to engage in a course of conduct* arguably affected with a constitutional interest, but proscribed by a statute," *Babbitt*, 442 U.S. at 298, or that she has censored herself out of "an actual and well-founded fear" that the law will be enforced against her. *Brown*, 86 F.4th at 767. Moreover, this potential future injury must be "imminent, not 'conjectural' or 'hypothetical.'" *Id.* at 761. While plaintiff argues that she censored herself in response to the amended noise ordinance by closing The Bar, she has alleged no "credible threat" of prosecution under the amended ordinance. *Id.* Neither does plaintiff allege that she intends to reopen The Bar or any other similar

9

establishment but for the amended ordinance, nor that she intends to engage in any other behavior that would violate the ordinance and likely result in an enforcement action against her.

Because plaintiff does not allege that she intends to engage in any conduct prohibited by the amended noise ordinance, she cannot establish standing under a pre-enforcement theory. *See Schirmer v. Nagode*, 621 F.3d 581, 586 (7th Cir. 2010) ("A plaintiff must show that she has 'an intention to engage in a course of conduct arguably affected with a constitutional interest, but proscribed by a statute, and [that] there exists a credible threat of prosecution thereunder.'") Accordingly, plaintiff has failed to show an injury in fact sufficient to establish standing under Article III of the Constitution. Her claims based on the amended noise ordinance must be dismissed for lack of subject matter jurisdiction.

ORDER

IT IS ORDERED that defendants' motion to dismiss (dkt. #9) is GRANTED. Plaintiff's claims based on actions taken by defendants before December 6, 2021, are DISMISSED as untimely, while her remaining claim is DISMISSED WITHOUT PREJUDICE for lack of subject matter jurisdiction. The clerk of court is directed to enter judgment and close this case.

Entered this 2nd day of March, 2026.

BY THE COURT:

/s/

_____
WILLIAM M. CONLEY
District Judge